UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

ANGELA ROBERSON,              ]
    Plaintiff,              ]
                              ]
vs.                           ]   1:11-CV-1786-LSC
                              ]
MICHAEL J. ASTRUE,            ]
Commissioner of Social Security, ]
    Defendant.             ]

MEMORANDUM OF OPINION

## I.  Introduction

The plaintiff, Angela Roberson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Roberson timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).[1]

---

[1] Plaintiff originally filed applications for a period of disability, DIB and SSI on March 1, 2004. These applications were denied. Thereafter, Plaintiff timely pursued and exhausted her administrative remedies and filed a civil action in this Court. *See Roberson v. Astrue*, 3:07-CV-1541-VEH. The District Court remanded the case to the Appeals Council, who in turn remanded the case to the Administrative Law Judge for a new hearing. The Administrative Law Judge held a hearing on June 9, 2009, and issued a decision on August 5, 2009, finding Plaintiff was not disabled. Said decision is the subject of the present appeal.

Ms. Roberson was forty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has obtained her GED. (Tr. at 427-52.) Her past work experiences include employment as a fast food manager, a waitress, a cook, a cook helper, and a sewing machine operator. (Tr. at 425.) Ms. Roberson claims that she became disabled on September 6, 2003, due to chronic back pain from her degenerative disc disease; degenerative joint disease of her left ankle, right knee, and right shoulder; carpal tunnel syndrome of the right wrist; bipolar disorder; major depression with psychotic features; personality disorder; and substance abuse, including alcohol, cocaine, and cannabis. (Doc. 7 at 5.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be

found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do

other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Roberson met the insured status requirements of the Social Security Act through September 30, 2008. (Tr. at 417.) He further determined that Ms. Roberson has not engaged in substantial gainful activity since the alleged onset date. (*Id.*) According to the ALJ, Plaintiff's chronic back pain from her degenerative disc disease; degenerative joint disease of her left ankle, right knee, and right shoulder; carpal tunnel syndrome of the right wrist; bipolar disorder; major depression with psychotic features (in partial remission); personality disorder; and substance abuse are considered "severe" based on the requirements set forth in the regulations. (Tr. at 418.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P. (Tr. at 421.) The ALJ did not find Ms. Roberson's allegations to be totally credible, and he determined that she has the residual functional capacity ("RFC") to perform light work with the following additional limitation:

> The claimant would have difficulty understanding and carrying out detailed instructions and maintaining concentration, but could concentrate for two hour periods. She will function better if the job is low stress and there is flexible scheduling where she is working without co-workers and public contact. She can only have casual contact with the public.

(Tr. at 422.)

According to the ALJ, Ms. Roberson is unable to perform any of her past relevant work, she is a "younger individual," has at least a high school education, and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 425.) The ALJ determined that transferability of job skills is not material to the determination of disability. (*Id.*) The ALJ found that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform considering her age, education, work experience, and RFC. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 6, 2003 through the date of this decision." (Tr. at 426.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the

Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to supply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III.    Discussion**

Ms. Roberson alleges that the ALJ's decision should be reversed and remanded because it is not supported by substantial evidence. Specifically, she believes that the ALJ failed to properly consider the medical evidence of record. (Doc. 7 at 16.) Plaintiff takes issue with the weight the ALJ gave to the opinions of the medical expert who testified at her hearing, the consultative psychological examiners, and her treating physician.

### A.   Weight Given to Opinion of Medical Expert Regarding GAF Scores

Plaintiff first argues that the ALJ mishandled the GAF[2] scores cited in her medical records. In particular, the plaintiff argues that the ALJ should not have given any weight to the opinion of Dr. Neil Lewis, a licensed psychologist called to testify as a medical expert at Plaintiff's June 2009 hearing. (Doc. 7 at 16.) Plaintiff submits that the ALJ's decision should be remanded "for a full and proper consideration of GAF scores, as originally ordered by this Honorable Court, without the subterfuge of an inappropriate source." (Doc. 7 at 17.)

---

[2]The GAF Scale (Axis V of the Multiaxial Assessment) "is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and in predicting outcome . . . the GAF scale is divided into 10 ranges of functioning. Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning . . . In most instances, ratings on the GAF Scale should be for the current period . . ." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-3 (4th ed. Text revision, 2000) (DSM-IV-TR).

This case was remanded by the District Court so that the ALJ could, among other things, reconcile the inconsistent GAF scores in the plaintiff's medical record. The previous ALJ opinion "neither explained the weight [the ALJ] gave the GAF scores or why [the ALJ] discredited Dr. Wood's GAF but still accepted his medical source statement regarding his examination of Ms. Roberson." (Tr. at 442.) Pursuant to the remand, the ALJ heard testimony from Dr. Lewis. (Tr. at 424.) Dr. Lewis testified that GAF scores are merely an estimation of functioning using a range of subjective behavioral descriptions. (Tr. at 771.) He further testified that because GAF scores have a somewhat subjective quality to them, it is difficult to compare scores given by two different practitioners, and that small differences in GAF scores are not significant. (*Id.*) The ALJ gave Dr. Lewis's testimony significant weight, and, as a result of Dr. Lewis's testimony, gave all of the GAF scores in the record very limited weight. (Tr. at 424.) Plaintiff argues that because Dr. Lewis is an inappropriate source to give full and proper consideration to Plaintiff's GAF scores, the ALJ should not have given his opinion any weight. (Doc. 7 at 16-17.)

In determining disability, the ALJ considers evidence from "acceptable medical sources," which include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 416.913(a). The ALJ affords a physician's testimony "substantial or

considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight afforded a medical opinion on the nature and severity of a claimant's impairments depends upon, among other things: the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision. *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). Here, however, the ALJ articulated good cause to give Dr. Lewis's testimony significant weight, and to therefore give the GAF scores very limited weight, because as is discussed below, Dr. Lewis's testimony was consistent with the record as a whole.

Dr. Jon Rogers completed a consultative psychological evaluation of Plaintiff in May 2004. (Tr. at 271.) He observed that Plaintiff arrived on time for her appointment, was dressed appropriately and was nicely groomed. (*Id.*) Dr. Rogers described Plaintiff's conversation as normal and her affect as restricted and anxious.

Dr. Rogers found that Plaintiff "is able to function independently," and diagnosed her with depressive disorder, anxiety disorder, alcohol and cocaine abuse (in remission), and personality disorder. (Tr. at 275.) He also found that the extent of Plaintiff's mental impairment is moderate and that she should be able to perform most activities of daily living. (Tr. at 277.) Dr. Rogers gave the Plaintiff a GAF score of 51.[3] (Tr. at 276.) The ALJ gave great weight to Dr. Rogers' assessment, other than the GAF score. (Tr. at 424.) He found that the assessment was consistent with the other medical evidence of record and the plaintiff's activities of daily living. (*Id.*)

Dr. Barry Wood completed a consultative psychological evaluation of Plaintiff in November 2005. (Tr. at 317-24.) Dr. Wood noted depressive syndrome, anxiety disorder, personality disorder, and partial remission of drug and alcohol abuse. (*Id.*) Dr. Wood also found that Plaintiff had moderate restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, as well as one episode of decompensation of extended duration. (*Id.*) He noted that her compliance with treatment for depression was not particularly good, but that she seemed to respond to medication when

---

[3] GAF scores between 51 and 60 reflect moderate symptoms, including moderate difficulty in social, occupational, or school settings. GAF scores between 41 and 50 reflect serious impairment in social, occupational, or school functioning. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000).

abstinent from drug and alcohol abuse. (*Id.*) Dr. Wood also filled out a medical source statement form, stating that the plaintiff had moderate difficulty responding appropriately to supervisors, co-workers, and customers, using judgment in complex work-related decisions, and dealing with changes in a routine work setting. (Tr. at 323.) He stated that she had mild difficulty using judgment in simple, one and two-step instructions; understanding, remembering, and carrying out simple one or two step and detailed or complex instructions; maintaining attention, concentration or pace for periods of at least two hours; and maintaining social functioning and activities of daily living. (Tr. at 324.) Dr. Wood gave Plaintiff a GAF score of 50. (Tr. at 322.) Dr. Lewis noted that the psychological evaluation performed by Dr. Wood in 2005 contained conclusions not supported by medical evidence. (Tr. at 774.) The ALJ found that Dr. Wood's assessment on the source statement form was inconsistent with other medical findings and Dr. Wood's own examination of Plaintiff. (Tr. at 424.) Therefore, the ALJ gave Dr. Wood's assessment little weight. (*Id.*)

On June 13, 2006, Plaintiff underwent a psychiatric evaluation at Riverbend Medical Center, and was given a GAF score of 45-50. (Tr. at 648.) At that evaluation, she was diagnosed with major depressive disorder, post traumatic stress disorder, panic attacks with agoraphoia, and polysubstance dependence in sustained remission.

(*Id.*) On June 26, 2006, Plaintiff's Riverbend progress notes indicated she was tolerating medication well without adverse effects, and she was given a GAF score of 55. (Tr. at 643.) In August 2006, Plaintiff was tolerating her medications well, was no longer feeling helpless and hopeless, and denied experiencing any sort of hallucinations. (Tr. at 639.) At that time, Plaintiff's GAF score had improved to 60. (*Id.*) The ALJ noted that Plaintiff responded well to treatment with medication and that her GAF score improved while she was at Riverbend. (Tr. at 424.)

As Dr. Lewis opined, many courts have noted that due to their subjective qualities, reliance upon GAF scores is of questionable value in determining an individual's mental functioning capacity. *See, e.g., Clarence Bros. v. Astrue*, 2012 WL 3243232, at *8 (M.D. Fla. Aug. 8, 2012); *DeBoard v. Comm'r of Social Security*, 2006 WL 3690637, at *3-4 (6th Cir. 2006). Indeed, the Eleventh Circuit has noted that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart,* 133 F. App'x 684, 692 n.5 (11th Cir. 2005). *See also* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000). In any event, Plaintiff's most recent GAF score was 60, which reflects moderate as opposed to severe symptoms. (Tr. at 639.)

Further, Plaintiff's GAF scores in the lower ranges are not supported by the plaintiff's own testimony about her daily activities, the medical evidence, and the record as a whole. For example, Plaintiff completed an activities questionnaire in 2004 where she indicated that she could take care of her personal needs, she prepared meals, and she enjoyed music and movies. (Tr. at 115.) Plaintiff indicated that sometimes she cannot get out of bed, but that she can do yard work. (Tr. at 115, 118.) At the 2009 hearing, Plaintiff testified that she could wash dishes and sweep floors and that she had crying spells about once a week. (Tr. at 750.) Plaintiff also underwent consultative examinations by Drs. Gill, Crouch, Ghandi, and Rogers. (Tr. at 279-81, 309-11, 692-99, 271-78.) Each of these consultative examiners indicated that Plaintiff had limitations, but each opined that she retained the ability to work and perform daily functions. (*Id.*) As such, substantial evidence supported the ALJ's decision to give great weight to the opinion of Dr. Lewis, and therefore to give limited weight to Plaintiff's GAF scores, because the entire weight of the evidence did not direct a finding that these GAF scores were entitled to any particular weight.

### B.     Weight Given to Opinions of Consultative Examiners

Plaintiff also argues that the ALJ did not give sufficient weight to the opinions of the consultative examiners, without specifying which ones. (Doc. 7 at 18.) Plaintiff

takes issue with the ALJ's determination that the opinions of some of the consultive examiners were entitled to no weight because they were based solely on the plaintiff's "subjective report of her symptoms." (Tr. at 424-25.)

As an initial matter, the ALJ gave great, considerable, or some weight to each of the following consultive examiners: Dr. Rogers, Dr. Ghandi, Dr. Gill, and Dr. Crouch. (Tr. at 427-52.) Each of these consultative examiners indicated that Plaintiff had limitations, but that she retained the ability to work and perform daily functions. The only consultative examiner whose opinion the ALJ gave no weight to because it was based only on the plaintiff's subjective allegations was Dr. John Haney. (Tr. at 424.) The Eleventh Circuit has stated that one of the factors that an ALJ may consider in determining that good cause exists not to give a physician's opinion substantial weight is if the physician's opinion was based primarily on the plaintiff's subjective complaints. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Dr. Haney performed a consultative psychological evaluation on Plaintiff in September 2008. (Tr. at 684-89.) He administered an intelligence test to Plaintiff as part of the evaluation, which demonstrated that Plaintiff fell in the borderline intellectual functioning capacity. (Tr. at 685.) On examination, Dr. Haney observed that Plaintiff was fully oriented, her recent and remote memory

appeared intact and she had no psychotic symptoms. (Tr. at 686.) Dr. Haney observed that Plaintiff's mood was depressed, but that her conversation was logical and goal-directed. (Tr. at 686.) Plaintiff reported to Dr. Haney that she enjoyed writing, listening to music, and cooking, and that she was obsessed with cleaning. (Tr. at 686.) Dr. Haney also completed a medical source opinion form, in which he checked boxes indicating that Plaintiff had marked limitations in her ability to understand, remember, and carry out detailed or complex instructions, and maintain attention, concentration or pace for periods of two hours. (Tr. at 688.) The ALJ gave this opinion form completed by Dr. Haney little weight because it was based in large part on Plaintiff's own subjective allegations and not on the objective findings Dr. Haney included in his report. (Tr. at 424.) Because Dr. Haney's notation of the objective findings do not support the severity of limitations he included in the medical source statement, the ALJ had good cause to give his opinion little weight.

### C. Weight Given to Opinion of Treating Physician

Plaintiff also argues that the ALJ did not give sufficient weight to the opinion of her treating physician, orthopedic surgeon Dr. Paul Raphael. (Doc. 7 at 18.) The ALJ determined that Dr. Raphael's opinion was entitled to no weight because it was based on the plaintiff's subjective report of her symptoms and because the doctor's

own records did not reveal the type of significant clinical and laboratory abnormalities one would expect if the plaintiff were in fact disabled. (Tr. at 424-25.) "Good cause" exists for an ALJ to give substantially less weight to a treating physician's opinion when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Dr. Raphael treated Plaintiff in 2008 and 2009. His treatment notes largely consist of recitations of Plaintiff's subjective reports of her symptoms, but do not indicate actual examination results. (Tr. at 632-34, 702-17.) For example, Plaintiff reported severe low back pain with radiation to the lower left extremity, numbness in the left big toe, and right side groin pain. (Tr. at 632-34, 702-17.) Dr. Raphael in turn diagnosed Plaintiff with "severe chronic low back pain with radiation to the left lower extremity, and probable osteoarthritis in both hips with chronic subluxation of right hip . . ." (Tr. at 632, 708, 712, 716.) Dr. Raphael also noted on several occasions that Plaintiff is "disabled" but provided no basis for that opinion. For example, in September 2008, Dr. Raphael opined that Plaintiff was disabled but did not even include an examination during that visit. (Tr. at 632-33.) The Court is aware that

opinions such as whether a plaintiff is disabled, the plaintiff's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court weighs doctors' evaluations of the plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis*, 125 F.3d at 1440. Such physician's opinions are relevant to the ALJ's findings, but they are not determinative, since the ALJ bears the responsibility for assessing a claimant's RFC. *See e.g.*, 20 C.F.R. § 404.1546(c). Dr. Raphael recited Plaintiff's subjective complaints, but does not provide an opinion on particular limitations caused by Plaintiff's impairments. Further, Dr. Raphael's notes are not bolstered by the other medical evidence and the record as a whole. As such, the ALJ had good cause to give no weight to the opinion of Dr. Raphael.

Finally, Plaintiff contends that if the ALJ had doubts about the opinions of some of the consultative examiners or the opinion of Dr. Raphael, he should have re-contacted these sources. It is true that the ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v.*

*Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, the regulations indicate that an ALJ can re-contact a consultative examiner if the report is inadequate or incomplete, not if the ALJ doubts the findings, as Plaintiff asserts. *See* 20 C.F.R. §§ 404.1519p(b); 416.919p(b). *See also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (finding an ALJ was not obligated to seek additional medical evidence or seek independent expert medical testimony because the evidence in the record was sufficient to support a decision). The ALJ was not obligated to re-contact the medical sources.

### IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Roberson's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 4th day of September 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704